## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

BRUCE A. LING JR.,

     Plaintiff,

v.                                                    Case No. 4:21-cv-34-WS/MJF

KILOLO KIJAKAZI,

     Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Bruce Antonio Ling Jr. brought this action under 42 U.S.C. § 405(g) to seek review of a final adverse decision of the Commissioner of the Social Security Administration. Because the Commissioner applied the proper legal standards and her decision is supported by substantial evidence, the District Court should affirm the Commissioner's decision.

### I. PROCEDURAL HISTORY

On February 14, 2018, Ling applied for supplemental security income ("SSI"). Tr. 267-73.[1] In his application, Ling alleged that he became disabled on November 8, 2011. Tr. 267. The SSA denied his claim initially and on

_____

[1] "Tr." refers to the transcript of the Social Security Administration ("SSA") record filed on September 15, 2021. Doc. 11. The page numbers cited herein are those found on the bottom right corner of each page of the transcript, rather than the page numbers that were assigned by the court's electronic docketing system.

reconsideration. Tr. 100-28. On January 13, 2020, Ling, represented by counsel, appeared and testified at a hearing before an Administrative Law Judge ("ALJ"). Tr. 32-57. On June 17, 2020, the ALJ issued a written decision in which he found that Ling was not disabled. Tr. 12-24. The Appeals Council denied Ling's request for review. Tr. 1-6. Thus, the ALJ's decision stands as the final decision of the Commissioner, subject to review in this court. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007). This appeal followed.

## II. FINDINGS OF THE ALJ

In denying Ling's claim, the ALJ made the following findings:

1.    Ling had not engaged in substantial gainful activity since February 14, 2018, the SSI application date;

2.    he had the following severe impairments: schizoaffective disorder, depressive type; schizophrenia; and obesity;

3.    he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments;

4.    he had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following non-exertional limitations:

> He is limited to understanding, remembering, and carrying out simple instructions, as well as performing simple tasks due to concentration deficits defined as the ability to apply commonsense understanding to carry out detailed, but uninvolved, written or oral instructions and deal with problems involving a few concrete variables in or from standardized situations. He can interact with co-

workers, but only through occasional conversations and interpersonal interactions; however, he can accept instructions and respond appropriately to supervisors. He can occasionally interact with [the] public, but should not engage in any extensive transactions or negotiations. He should be in a low stress environment, defined as no more than occasional complex decision making [and] . . . no more than occasional changes in work setting.

5.    he had no past relevant work, but considering his age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that he could perform; and

6.    he was not disabled, as defined in the Social Security Act, since February 14, 2018, the SSI application date. Tr. 14-23.

### III. STANDARD

A federal court's review of the Commissioner's final decision is limited. A federal court may not "decide the facts anew, reweigh the evidence, or substitute its judgment for that of the [Commissioner]." *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1104 (11th Cir. 2021) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). Instead, a federal court's review must ensure that the Commissioner's decision is supported by substantial evidence in the record and that the Commissioner applied proper legal standards. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). If so, this court cannot disturb the Commissioner's decision. 42 U.S.C. § 405(g); *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). The threshold for the evidentiary

sufficiency in Social Security cases is not high. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Although substantial evidence is "more than a mere scintilla," it is not a preponderance; it requires only "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." *Id.*; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if it is supported by substantial evidence. *Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).

Pursuant to 20 C.F.R. § 416.920(a)(4)(i)-(v),[2] the Commissioner analyzes a disability claim in five steps:

1.    Is the claimant currently engaged in substantial gainful activity?

2.    Does the claimant have any severe impairments?

3.    Does the claimant have any severe impairments or combination of impairments that meet or equal those listed in 20 C.F.R. Part 404?

4.    Does the claimant have the RFC to perform work despite limitations and are there any impairments that prevent past relevant work?

5.    Do the claimant's impairments prevent other work?

---

[2] Generally, the same legal standards apply to claims for disability insurance benefits ("DIB") and SSI, but separate parallel statutes and regulations exist for DIB and SSI claims. *See* 20 C.F.R. §§ 404, 416. Thus, citations of statutes or regulations found in quoted court decisions in this report and recommendation should be considered to refer to the appropriate parallel provision.

The claimant bears the burden of establishing a severe impairment that keeps him from performing past relevant work. 20 C.F.R. § 416.912; *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1278 (11th Cir. 2020) ("A claimant bears the burden at the first four steps."). If the claimant establishes such an impairment, the burden shifts to the Commissioner at Step Five to show the existence of other jobs in the national economy that, given all of the claimant's impairments, the claimant can perform. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1321 (11th Cir. 2021); *Goode*, 966 F.3d at 1278. If the Commissioner carries this burden, the claimant then must prove that he cannot perform the work suggested by the Commissioner. *Goode*, 966 F.3d at 1279; *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

## IV. MEDICAL HISTORY AND HEARING TESTIMONY

### A.   <u>Relevant Medical History</u>[3]

Between August 2017 and June 2020, Ling appeared healthy, well nourished, and well developed. Tr. 642, 709, 723, 726, 729, 732, 735, 738, 742, 745, 921, 933, 941, 954. Ling reported that he exercised occasionally. Tr. 641, 644, 648, 651, 696, 700, 722, 725, 731. Ling ambulated normally. Tr. 642, 644, 648, 652, 696, 700, 722-

---

[3] In SSI cases, claimants must show a disability between the date of the SSI application and the date of the ALJ's decision. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Thus, the undersigned summarizes only the medical history on or around February 14, 2018—the date Ling filed his SSI application—through June 17, 2020—the date of the ALJ's opinion. The undersigned also summarizes only the medical history directly relevant to the issues raised by Ling on appeal.

23, 725, 731-32, 735, 738, 742, 745-46, 921, 954, 968, 972. His station frequently was normal, as were his muscle strength and tone. Tr. 723, 726, 732, 735, 742, 746, 921-22, 954, 968-69. Ling had full range of motion in all extremities. Tr. 709, 723, 726, 729, 735, 745-46, 921, 954, 970-72. He often denied, among other things, back pain, joint pain, muscle weakness, arthritis, and leg pain with exertion. Tr. 540, 708, 745, 919, 932, 940, 952, 961. At other times, however, Ling reported back pain, joint pain, or muscle weakness. Tr. 645, 726, 729, 732, 910.

With respect to Ling's mental impairments, Ling sometimes denied depression and hallucinations. Tr. 920, 932, 940, 952, 962. At other times, he reported auditory hallucinations. Tr. 689, 851. He also reported feeling frustrated, anxious, and tired. Tr. 689-90, 851, 881, 892. Although he was described as irritable, Ling often was cooperative and maintained fair eye contact at his medical appointments. Tr. 688, 697, 709, 745, 880, 884, 888, 892, 922, 954. His insight and judgment were sometimes described as "poor/limited." Tr. 881, 885, 889, 893.

At his medical appointments, Ling indicated that his "issues" arose after he received an influenza vaccination in November 2011, while he was incarcerated. *E.g.*, Tr. 420, 652, 654, 720, 727.

**B.**    <u>**Summary of the Hearing Testimony**[4]</u>

At his hearing, Ling represented that he suffered from insomnia, irritable bowel syndrome, post-traumatic stress disorder, chronic pain syndrome, chronic fatigue syndrome, schizophrenia, and prostate disorder. Tr. 37.

According to Ling, writing with a pencil hurts his hand and holding a glass, mug, or can hurts his wrists. Tr. 39-40. He testified that he experiences pain throughout his body, but that most of his pain is in his back, spine, neck, and shoulders. Tr. 40-41. Although Ling testified that he experiences swelling in his knees, he did not remember the last time his knees had swelled. Tr. 41-42.

Ling testified that he could stand or sit for only five minutes at a time and, because of muscle weakness, could walk only about five minutes before he needed to rest. Tr. 43-45. Despite these limitations, Ling testified that he does light yard work, which includes picking up trash, trees, and leaves. Tr. 50. Ling also testified that he has anxiety, experiences panic attacks, and hears voices. Tr. 46-47, 51-52. Ling again attributed his "issues" to the influenza vaccination he received in November 2011, while incarcerated. Tr. 51, 54.

---

[4] The undersigned summarizes only the hearing testimony directly relevant to the issues raised by Ling on appeal.

C.     **The SSA Questionnaires**

The record contains three questionnaires that Ling submitted to the SSA.

1.     *Supplemental Anxiety Questionnaire*

On March 27, 2018, Ling submitted a supplemental anxiety questionnaire to the SSA. Tr. 307-09. Ling reported that he began having anxiety attacks when he was "young." Tr. 307. He reported that he experienced 30 anxiety attacks in the three months preceding his filing of the questionnaire. Tr. 308. Ling's anxiety attacks last between 30 minutes and "a couple of hours," and are caused by "anything that bothers" him or "puts [him] on the spot" and worsened by "something else happen[ing]." *Id.*

Ling reported that his anxiety attacks affect his ability to function because "[i]t seems like it stops [him] from thinking and focusing. It keeps [him] from doing what [he] need[s] to do. It blocks [him] from what [he is] saying or thinking about." Tr. 309. Ling's anxiety attacks are relieved "when everything is going ok," by "peace," by spending time alone, and by "getting away from whatever is causing the problem." Tr. 308.

2.     *First Supplemental Pain Questionnaire*

On March 27, 2018, Ling also submitted a supplemental pain questionnaire to the SSA. Tr. 310-12. Ling described his neck, back, joint, and leg pain as sharp and achy, and rated his pain 8/10. Tr. 310. Ling reported that his pain is caused by

bending, "standing (5 minutes)," "walking greater than 1/4 mile," sitting longer than five minutes, reaching, temperature extremes, and changes in the weather. *Id.* Ling reported that he experiences this pain all day on a daily basis. Tr. 311. He reported that warm showers, ibuprofen, and gabapentin relieve his pain. *Id.*

### 3.   *Second Supplemental Pain Questionnaire*

A few months later, on July 3, 2018, Ling submitted a second supplemental pain questionnaire to the SSA. Tr. 330-32. Ling described his pain as follows:

> Muscle pain from neck to toes – burning/throbbing pain – 8/10 pain scale; joint pain – shoulder, fingers, toes, knees, elbows, neck – burning/throbbing – 8/10 pain scale; headaches – dull, throbby – top & back of head – 8/10 pain scale.

Tr. 330. Ling reported that his pain is caused by "bending, standing longer than 5 minutes, walking more than 10 minutes, reaching, temperature extremes, [and] weather changes." *Id.* According to Ling, he experiences this pain all day on a daily basis. Tr. 331. Warm showers and "maybe some medications" relieve his pain. *Id.*

### D.   **Post-hearing Consultative Examinations**

At Ling's hearing, the ALJ scheduled two consultative examinations for Ling: one general medical consultative examination, and one psychological consultative examination. Tr. 54-55.

### 1.   *General Medical Consultative Examination*

On February 3, 2020, Dr. George F. Slade, M.D., conducted a general medical consultative examination of Ling. Tr. 967-80. Ling reported that he experienced

depression, recurrent suicidal or homicidal thoughts, and mood swings. Tr. 968. He also reported having neck pain with limited movement, joint stiffness, and muscle pain. *Id.*

Ling's range of motion in his extremities, however, was within normal limits, with no indication of joint abnormality. Tr. 968, 970-72. His grip strength in both hands was 5/5, and his ability to manipulate buttons, paperclips, and coins was within normal limits. Tr. 968-69. Ling's muscle bulk and tone, as well as his gait, were normal. *Id.*

Dr. Slade opined that Ling could:

- lift and carry up to 50 pounds for more than two-thirds of an eight-hour workday;

- sit, stand, or walk for six hours each without interruption;

- use his hands to reach, handle, finger, feel, push, and pull for more than two-thirds of an eight-hour workday; and

- climb stairs, ramps, ladders, and scaffolds; balance; stoop; kneel; crouch; and crawl for more than two-thirds of an eight-hour workday.

Tr. 973-76. Dr. Slade also opined that Ling's physical impairments did not prohibit him from walking a block at a reasonable pace on rough or uneven surfaces; climbing a few steps at a reasonable pace with the use of a single handrail; and sorting, handling, or using paper. Tr. 978.

2. *Psychological Consultative Examination*

On February 4, 2020, Dr. Michael G. Railey, Sr., Ph.D., conducted a psychological examination of Ling. Tr. 981-87. During the examination, Ling's presentation was "clear, concise, and free of any confounding statements." Tr. 982. Ling's mood was irritable, but he was interactive. *Id.* Ling did not evidence any delusional processes and denied suicidal and homicidal ideations. Tr. 982-83.

Dr. Railey opined that, from a purely psychological perspective, Ling was stable and did "not suffer from any disorder that negatively impact[ed] his ability to work though some ongoing treatment m[ight] be necessary to maintain stability and gainful activity." Tr. 983. Dr. Railey also opined that Ling did not have an impairment that affected his ability to understand, remember, and carry out instructions; to interact appropriately with supervisors, co-workers, and the public; to respond to changes in a routine work setting; to concentrate, persist, or maintain pace; or to adapt or manage himself. Tr. 985-86.

## V. DISCUSSION

Ling raises seven arguments on appeal. Doc. 19 at 1-3.

## A. <u>The ALJ Had No Duty to Investigate Ling's Vaccine-Injury Claims</u>

Ling's first claim on appeal is convoluted:

When put on notice ALJ fail to investigate or take inconsideration of how [Ling's] Influenza vaccine injuries in conjunction with totality of other physical and mental illness affected his ability to work. The ALJ

did not articulate adequate reasons for discounting this evidence
supporting finding of disability.

*Id.* at 1 (errors in original).

As noted above, Ling attributes his "issues" to the November 2011 influenza
vaccination he received while he was incarcerated. Tr. 51, 54, 420, 652, 654, 720,
727. But because Ling offers no factual or legal support for this claim, and the
undersigned is unable to find any support in the record for Ling's "vaccine injuries"
outside of Ling's own statements,[5] the District Court should reject this claim.
*Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We
have long held that an appellant abandons a claim when he either makes only passing
references to it or raises it in a perfunctory manner without supporting arguments
and authority."); *see Hi-Tech Pharms., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1194
(11th Cir. 2018) (noting that "challenges that are merely hinted at . . . do not merit
consideration").

## B.  Ling Fails to State a Claim of Ineffective Assistance of Counsel

Ling next argues that his counsel was ineffective for failing to "effectively
elaborate on claims of vaccine injuries in connection with debilitating impairment
and not objecting to manipulated inaccurate medical records." Doc. 19 at 1 (errors

---

[5] Ling also argues on appeal that the ALJ improperly evaluated Ling's statements
regarding his symptoms. Doc. 19 at 2. The undersigned addresses the ALJ's
evaluation of those statements later in this report and recommendation.

in original). Ling fails to provide any factual or legal support for this claim, so for that reason alone this claim should be denied. *Sapuppo*, 739 F.3d at 681; *see Hi-Tech Pharms., Inc.*, 910 F.3d at 1194.

Ling's claim also fails for a second, independent reason: no court has recognized a claim of ineffective assistance of counsel in the Social Security context. *Brandyburg v. Sullivan*, 959 F.2d 555, 562 (5th Cir. 1992) ("The Supreme Court has never recognized a constitutional right to counsel at an SSA hearing.") (citing *Clark v. Schweiker*, 652 F.2d 399, 403 (5th Cir. 1981)); *Nicholson v. Rushen*, 767 F.2d 1426, 1427 (9th Cir. 1985); *Ahmed v. Comm'r of Soc. Sec.*, 2021 WL 4132295, at *2 (E.D. Pa. Sept. 10, 2021); *Taviere v. Comm'r of Soc. Sec.*, 2019 WL 4164961, at *3 (M.D. Fla. Sept. 3, 2019). For this reason, too, Ling's claim should be denied.

## C.  **The ALJ Properly Weighed the Evidence in the Record**

Ling next argues that the ALJ erred by giving "little or no weight" to evidence that Ling's "mental illness and physical impairments" prevent him from working. Doc. 19 at 2. Specifically, Ling argues that the ALJ improperly weighed the opinion of Ling's "treating psychiatrist," Ling's own statements regarding the severity of his symptoms, and the evidence submitted by "witnesses" on Ling's behalf. *Id.*

### 1.  *Ling Fails to Identify His "Treating Psychiatrist"*

As the Commissioner notes, Ling does not identify his "treating psychiatrist" or the treating psychiatrist's "opinion." Doc. 21 at 7. Because Ling offers no factual

or legal support for this argument, and the undersigned is unable to find any support in the record, the District Court should reject this argument. *Sapuppo*, 739 F.3d at 681; *see Hi-Tech Pharms., Inc.*, 910 F.3d at 1194.

### 2. *Ling's Symptoms Are Inconsistent with the Record*

In support of this argument, Ling offers the three questionnaires he submitted to the SSA. Doc. 19 at 2.

In determining whether a claimant is disabled, the Commissioner considers all of the claimant's symptoms, including pain, "and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 416.929(a). The Eleventh Circuit has established a three-part test for evaluating a claimant's testimony regarding subjective symptoms. *Foote*, 67 F.3d at 1560; *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam). The claimant "must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt*, 921 F.2d at 1223); *Foote*, 67 F.3d at 1560; *see* 20 C.F.R. § 416.929(a).

If the record shows that the claimant has a medically determinable impairment that could reasonably be expected to produce his symptoms, the ALJ then must

"evaluate the intensity and persistence" of the claimant's symptoms to determine how, if at all, the symptoms limit the claimant's capacity for work. 20 C.F.R. § 416.929(c)(1); *Strickland v. Comm'r of Soc. Sec.*, 516 F. App'x 829, 831 (11th Cir. 2013) ("If the record shows that the claimant has a medically-determinable impairment that could reasonably be expected to produce her symptoms, the ALJ must evaluate the intensity and persistence of the symptoms in determining how they limit the claimant's capacity for work.").

In doing so, the ALJ evaluates "all of the available evidence from [the claimant's] medical sources and nonmedical sources" about how the symptoms affect the claimant. 20 C.F.R. § 416.929(c)(1)-(2); *Jarrell v. Comm'r of Soc. Sec.*, 433 F. App'x 812, 814 (11th Cir. 2011) (noting the ALJ must consider "all evidence, including subjective statements about the intensity, persistence, and functionally limiting effects of pain . . . [and] the objective medical evidence"). The ALJ also considers other factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of the claimant's medication; (5) any treatment other than medication the claimant received for pain relief; (6) any measures the claimant used to relieve his pain or symptoms; and (7) other factors concerning the claimant's functional

limitations and restrictions due to his pain or symptoms. 20 C.F.R § 416.929(c)(3); *Strickland*, 516 F. App'x at 831-32.

After considering all of the evidence, the ALJ must determine whether there are any inconsistencies between the claimant's subjective testimony about his symptoms and the rest of the evidence. 20 C.F.R § 416.929(c)(4); *Strickland*, 516 F. App'x at 832. If there are inconsistencies, the ALJ can discredit the claimant's subjective testimony of pain or other symptoms, because "credibility determinations are the province of the ALJ." *Moore*, 405 F.3d at 1212. But the ALJ must "articulate explicit and adequate reasons" for doing so, unless the bases for the ALJ's credibility determination are obvious from the record. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991); *Foote*, 67 F.3d at 1562 ("If proof of disability is based upon subjective evidence and a credibility determination is, therefore, crucial to the decision, the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding.") (citation and internal quotation marks omitted).

The ALJ's decision to discredit the claimant's testimony is reviewed for substantial evidence. *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (per curiam). "While the ALJ does not have to cite to particular phrases or formulations, broad findings that a claimant was incredible and could work are, alone, insufficient for [the court] to conclude that the ALJ considered the claimant's medical condition

as a whole." *Strickland*, 516 F. App'x at 832 (citing *Foote*, 67 F.3d at 1562); *see Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (noting that an ALJ need not "discuss every piece of evidence in the record and is prohibited only from ignoring an entire line of evidence that supports a finding of disability") (citation omitted); *Miles v. Comm'r of Soc. Sec.*, 652 F. App'x 923, 926 (11th Cir. 2016) ("The ALJ is not required to discuss every piece of evidence so long as the decision does not broadly reject the claimant's case and the decision is sufficient for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole."). Absent articulated reasons for discrediting the claimant's subjective-symptoms testimony, this court must, as a matter of law, accept the claimant's testimony as true. *Brown*, 921 F.2d at 1236 (citing *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988)).

After considering "the effects of [Ling's] impairments, both separately and in combination," as well as Ling's responses to the SSA questionnaires, the ALJ determined that although Ling's medically determinable impairments could reasonably be expected to cause his alleged symptoms, Ling's statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the record evidence. Tr. 18-21.

Although Ling cites the three SSA questionnaires, the record evidence belies many of the statements in those questionnaires. For example, in the supplemental

pain questionnaires, Ling rated his neck, back, joint, and leg pain 8/10, and reported that he experiences this pain all day on a daily basis. Tr. 310-11, 330-31. At his medical appointments, however, Ling often denied, among other things, back pain, joint pain, muscle weakness, arthritis, and leg pain with exertion. Tr. 540, 708, 745, 919, 932, 940, 952, 961. Additionally, Ling consistently had a normal gait and station; normal muscle strength and tone; and full range of motion in all extremities. Tr. 642, 644, 648, 652, 696, 700, 709, 722-23, 725-26, 731-32, 735, 738, 742, 745-46, 921-22, 954, 968-69, 970-72. He even reported that he exercised occasionally. Tr. 641, 644, 648, 651, 696, 700, 722, 725, 731.

As to Ling's supplemental anxiety questionnaire, Ling reported that he experienced 30 anxiety attacks in the three months preceding the filing of the questionnaire and that his anxiety attacks last between 30 minutes and "a couple of hours." Tr. 308. He also reported that the attacks are caused by "anything that bothers" him or "puts [him] on the spot" and worsened by "something else happen[ing]." *Id.*

Ling, however, often was cooperative and maintained fair eye contact at his appointments. Tr. 688, 697, 709, 745, 880, 884, 888, 892, 922, 954. Additionally, the ALJ found Dr. Railey's opinion that Ling did not suffer from any disorder that negatively impacted his ability to work "not quite persuasive" because the opinion

was inconsistent with the record evidence. Tr. 22. The ALJ, therefore, included several non-exertional limitations in Ling's RFC:

- Ling was limited to "understanding, remembering, and carrying out simple instructions";

- he was limited to "performing simple tasks due to concentration deficits defined as the ability to apply commonsense understanding to carry out detailed, but uninvolved, written or oral instructions and deal with problems involving a few concrete variables in or from standardized situations";

- although he could interact with coworkers, Ling was limited to only "occasional conversations and interpersonal interactions";

- he could only "occasionally interact with [the] public," although he "should not engage in any extensive transactions or negotiations"; and

- he "should be in a low stress environment, defined as no more than occasional complex decision making [and] . . . no more than occasional changes in work setting."

Tr. 17. Thus, despite Ling's contrary assertions, the ALJ did not afford "little or no weight" to Ling's statements regarding his symptoms.

For the reasons set forth above, the ALJ properly discredited Ling's statements regarding his symptoms and substantial evidence supports the ALJ's decision to do so. The District Court, therefore, should reject this argument.

### 3.    *Third-Party Function Report*

Ling's reference to evidence submitted by "witnesses" on his behalf likely refers to the third-party function report submitted by Marcia Thomas to the SSA on April 3, 2018.[6] Tr. 313-20. Thomas reported that Ling's impairments affect his ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, and use his hands. Tr. 318. Thomas also reported that Ling's impairments affect his memory and concentration, and his ability to complete tasks, follow instructions, and get along with others. *Id.*

The ALJ considered Thomas's third-party function report and found Thomas's opinions not persuasive because Thomas was not an acceptable medical source and she was not familiar with the overall medical record. Tr. 18, 22; *see* 20 C.F.R. § 416.902(i) (defining a "medical source" as "an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law"). The ALJ, therefore, properly addressed Thomas's third-party function report and the District Court should reject this argument for that

---

[6] Although Thomas did not specify how she is related to Ling, she reported that she spends "all day just about" with him. Tr. 313.

reason alone. *See Lucas v. Sullivan*, 918 F.2d 1567, 1574 (11th Cir. 1990) (noting that an ALJ should state the weight accorded to each item of impairment evidence and the reasons for accepting or rejecting that evidence).

But even if the ALJ did not properly consider Thomas's report, the error would be harmless because the information in the report largely is cumulative of the information in the supplemental pain questionnaires that Ling submitted to the SSA. *De Olazabal v. Soc. Sec. Admin., Comm'r*, 579 F. App'x 827, 832 (11th Cir. 2014) (holding that an ALJ's failure to consider a third-party function report was harmless because the report "was merely cumulative of [the claimant's] testimony and the medical evidence in the record"). For this reason, too, the District Court should reject this argument.

## D.    The ALJ Properly Determined Ling's RFC

Plaintiff appears to argue next that the ALJ erred in assessing Ling's RFC because the ALJ found that Ling could perform jobs that required "frequent or constant reaching"; "repetitive exertion of the hand, arm and shoulder, muscles and tendons"; and "leaning bending of waist and spine." Doc. 19 at 2 (errors in original). He asserts that his "ability to reach and exert hand arm and shoulders is impaired in addition to spinal pain/stiffness of muscle and bone from sitting." *Id.* (errors in original).

At Step Four, the ALJ determines a claimant's RFC, which encompasses a claimant's remaining ability to do work despite his limitations. 20 C.F.R. § 416.945(a)(1); *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268 (11th Cir. 2019) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). This includes a claimant's "ability to lift and carry weight, sit, stand, push, pull, walk, etc., as well as the claimant's mental abilities." *Pupo v. Comm'r, Soc. Sec. Admin.*, 17 F.4th 1054, 1064 (11th Cir. 2021).

In determining the claimant's RFC, the ALJ must consider all of the claimant's medically determinable impairments, severe and non-severe alike. *Schink*, 935 F.3d at 1268-69 (citing *Bowen v. Heckler*, 748 F.2d 629, 634-35 (11th Cir. 1984)). "A claimant's impairments and related symptoms, including pain, may impose exertional and non-exertional limitations on her ability to meet the demands of certain jobs." *Douglas v. Comm'r, Soc. Sec. Admin.*, 832 F. App'x 650, 655 (11th Cir. 2020) (citing 20 C.F.R. § 416.969a(a)). Exertional limitations are limitations imposed by the claimant's "impairment(s) and related symptoms, such as pain, [that] affect only [the claimant's] ability to meet the strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing, and pulling)." 20 C.F.R. § 416.969a(b). If the ALJ's RFC assessment is supported by substantial evidence and is the result of the application of proper legal standards, a court cannot disturb it. *Carnes*, 936 F.2d at 1218.

Although Ling does not identify a particular impairment that is the source of the exertional limitations he lists above, he does reference "TRMC And Tallahassee Orthopedic Center Medical Records (Tendonitis)." Doc. 19 at 2. The undersigned was unable to locate in the record the medical records to which Ling refers or a diagnosis of tendonitis. Additionally, tendonitis was not an impairment that Ling mentioned at his hearing. Tr. 37.

Even if Ling does have tendonitis, however, that impairment's mere existence does not limit Ling's ability to work. *Moore*, 405 F.3d at 1213 n.6 (noting that "the mere existence" of an impairment "does not reveal the extent to which [it] limit[s] [the plaintiff's] ability to work or undermine the ALJ's determination in that regard") (citing *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)); *Tatelman v. Colvin*, 296 F. Supp. 3d 608, 611 (W.D.N.Y. 2017) (noting that substantial evidence supported an ALJ's RFC determination that the plaintiff was able to "perform a full range of work at all exertional levels" when the plaintiff's treatment notes included no evidence of exertional limitations).

Ling's medical appointments consistently revealed a normal gait and station; normal muscle strength and tone; and full range of motion in all extremities. Tr. 642, 644, 648, 696, 700, 722-23, 725-26, 729, 731-32, 735, 738, 742, 745-46, 921-22, 954, 968-72. Additionally, Dr. Slade opined that Ling could, among other things, (1) lift and carry up to 50 pounds for more than two-thirds of an eight-hour workday;

(2) use his hands for reaching, handling, fingering, feeling, pushing, and pulling for more than two-thirds of an eight-hour workday; and (3) stoop; kneel; crouch; and crawl for more than two-thirds of an eight-hour workday. Tr. 973-76. Furthermore, other than his own statements, Ling offers no evidence that he suffers from a physical impairment that requires an exertional limitation in his RFC.

In short, substantial evidence supports the ALJ's decision not to include exertional limitations in Plaintiff's RFC. *Carnes*, 936 F.2d at 1218. Because Plaintiff has failed to demonstrate otherwise, the District Court should reject this argument.

### E.    Ling Is Not Entitled to a Sentence-Six Remand

Ling also argues that a remand is warranted in light of "newly developed/discovered evidence." Doc. 19 at 2-3. The undersigned construes this argument as an argument that Ling's case should be remanded under sentence six of 42 U.S.C. § 405(g).

Section 405(g) authorizes two types of remands: a sentence-four remand and a sentence-six remand. *Melkonyan v. Sullivan*, 501 U.S. 89, 97-98 (1991) (citation omitted). Under a sentence-six remand, a federal court has "the power to remand the application for benefits to the Commissioner for the taking of additional evidence upon a showing 'that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior

proceeding.'" *Ingram*, 496 F.3d at 1261 (quoting 42 U.S.C. § 405(g)); *Jackson v. Chater*, 99 F.3d 1086, 1095 (11th Cir. 1996).

A sentence-six remand is warranted, therefore, if the claimant satisfies three elements:

(1)    the claimant provides "new, noncumulative evidence";

(2)    "the evidence is 'material,' that is, relevant and probative so that there is a reasonable possibility that it would change the administrative result"; and

(3)    "there is good cause for the failure to submit the evidence at the administrative level."

*Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 821 (11th Cir. 2015) (citing *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986)). The good-cause element requires that "the evidence did not exist at the time of the administrative proceedings." *Arnold v. Soc. Sec. Admin., Comm'r*, 724 F. App'x 772, 781 (11th Cir. 2018) (citations omitted).

In his memorandum in support of his complaint, Ling does not elaborate on the new evidence that requires a sentence-six remand in this case. Doc. 19 at 2-3. But Ling attached to his "Motion of Supplemental Certification Newly Developed/Discovered Evidence" medical records from January 26, 2022 to

February 16, 2022.[7] Doc. 20 at 3-21. Although these medical records did not exist at the time of Ling's hearing, the records are not "material." Most of the records do not address Ling's impairments or how those impairments limit his ability to work. *Id.* at 3-8. The records that do address Ling's impairments and related limitations largely record Ling's own statements regarding his symptoms. *Id.* at 10-11.

Because there is not a reasonably probability that the records attached to Ling's motion would change the ALJ's decision below, this argument should be rejected and Ling's motion should be denied.[8]

## F.   <u>Ling's Objections to the Undersigned's Orders are Untimely</u>

Ling also appears to argue that the undersigned erred by not appointing counsel to represent Ling. Doc. 19 at 3.

The undersigned entered orders denying Ling appointment of counsel on January 21, 2022 and March 4, 2022. Docs. 14, 17. Under Federal Rule of Civil Procedure 72(a), a party may serve and file objections to a magistrate judge's non-dispositive order within 14 days of being served with a copy of the order. Fed. R.

---

[7] Ling also attaches to his motion documents discussing Guillain-Barre Syndrome. Doc. 20 at 14-21. Because Ling has never been diagnosed with Guillain-Barr Syndrome, those documents are irrelevant to Ling's argument.

[8] Any relief sought in Ling's "Motion of Supplement Certification Newly Developed/Discovered Evidence" is cumulative of the relief requested in Ling's memorandum in support of his complaint. *Compare* Doc. 19, *with* Doc. 20.

Civ. P. 72(a). "A party may not assign as error a defect in the order not timely objected to." *Id.*

To the extent Ling is objecting to the undersigned's orders of January 21, 2022 and March 4, 2022, Ling's objections are untimely. Ling filed his memorandum in support of his complaint on April 18, 2022, more than forty-five days after the undersigned entered the March 4, 2022 order.[9] Doc. 19.

Regardless, as the undersigned previously explained, "[a]ppointment of counsel in civil cases is . . . a privilege," not a constitutional right. *Kilgo v. Ricks*, 983 F.2d 189, 193 (11th Cir. 1993) (quoting *Poole v. Lambert*, 819 F.2d 1025, 1028 (11th Cir. 1987)). A litigant requesting the appointment of counsel, therefore, must make two threshold showings: (1) that he made a genuine effort to secure counsel himself, and (2) that his case presents exceptional circumstances. *Bass v. Perrin*, 170 F.3d 1312, 1320 (11th Cir. 1999). Such exceptional circumstances rarely arise in the Social Security context. *DeGaspari v. Colvin*, 2014 WL 12862201, at *1 (S.D. Fla. Aug. 19, 2014) (noting that Social Security cases typically do not present "complex or novel" issues); *see Burns v. Saul*, 2021 WL 4987181, at *1 (N.D. Fla. July 6, 2021) (collecting cases).

---

[9] It appears that Ling first attempted to file his memorandum in support of his complaint with the United States Court of Appeals for the Eleventh Circuit. Doc. 19-1 at 1. The Court of Appeals received Ling's appeal on April 6, 2022. *Id.* Even at this earlier date, however, Ling's objections were still over two weeks past the fourteen-day deadline.

On January 21, 2022, the undersigned denied Ling's motion for appointment of counsel. Doc. 14. As to the first prong, the undersigned denied Ling's motion because Ling failed to show that he made a genuine effort to secure counsel himself. *Id.* at 3. As to the second prong, the undersigned denied Ling's motion for three reasons: (1) Ling provided no factual support or legal basis for his perfunctory allegation that he was denied the right to be examined by an experienced expert medical specialist; (2) Ling did not request appointment of counsel based on the existence of a mental impairment; and (3) because the District Court's review of Ling's case is limited to review of the administrative record, Ling would not be required to present evidence or elicit testimony. *Id.* at 3-4.

On March 4, 2022, the undersigned denied Ling's motion for reconsideration of appointment of counsel. Doc. 17. As to the first prong, Ling alleged that he had contacted some attorneys, but he acknowledged that most of those attorneys did not handle Social Security appeals. *Id.* at 3. Regardless, the undersigned denied Ling's motion for reconsideration under the second prong because Ling again failed to provide any factual support or legal basis for his claim on appeal. *Id.* at 3-4; *Bridges v. Soc. Sec. Admin.*, 2005 WL 1719251, at *1 (W.D. Tex. July 22, 2005) (denying a plaintiff's motion for appointment of counsel because the plaintiff failed to provide a legal basis for his requested relief).

Because any objection to the undersigned's orders denying appointment of counsel is untimely, and Ling failed to show that the appointment of counsel was warranted in this case, the District Court should reject this argument.

**G.**   **Ling Fails to Provide Any Support for His Counsel's Previous Claims**

In his final claim, Ling "reasserts all previous claims presented by his attorney." Doc. 19 at 3. Because Ling offers no factual or legal support for these arguments, the District Court should reject them. *Sapuppo*, 739 F.3d at 681; *see Hi-Tech Pharms., Inc.*, 910 F.3d at 1194.

## VI. CONCLUSION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that the District Court:

1.   **AFFIRM** the Commissioner's decision, and **DISMISS** this action in accordance with this order.

2.   Enter **FINAL JUDGMENT**, pursuant to sentences four and six of 42 U.S.C. § 405(g), **AFFIRMING** the decision of the Commissioner.

3.   **DENY** Ling's "Motion of Supplemental Certification Newly Developed/Discovered Evidence." Doc. 20.

4.   Direct the clerk of the court to close the case file.

At Pensacola, Florida, this <u>24th</u> day of May, 2022.

<u>/s/ *Michael J. Frank*</u>
**Michael J. Frank**
**United States Magistrate Judge**

## <u>NOTICE TO THE PARTIES</u>

**The District Court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b). Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**